[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11955
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 19, 2011
JOHN LEY
CLERK

D.C. Docket No. 5:07-cv-00432-WTH-GRJ

JESSIE MILTON,

Plaintiff-Appellant,

versus

KATHRYN TURNER,
Individual Capacities,
BLANCA CAMPOS,
Individual Capacities,
R. MOORE,
Sergeant, Individual Capacities,
T. NEAL,
Individual Capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 19, 2011)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Jessie Milton, proceeding *pro se*, appeals the district court's dismissal of his 42 U.S.C. § 1983 suit, which alleged that Kathryn Turner, Blanca Campos, R. Moore, and T. Neal, all employees of the Florida Department of Corrections, acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. On appeal, he argues that the district court failed to properly construe his claims and consider all allegations in the complaint.

We review *de novo* a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (per curiam). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The complaint need not include detailed factual allegations, but it must set forth "more than labels and conclusions, and a

2

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964–65. We no longer apply a heightened pleading standard to claims brought pursuant to § 1983. *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). Further, "*pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

To state a claim under § 1983, a plaintiff must allege: (1) a violation of a specific constitutional right or federal statutory provision; (2) was committed by a person acting under color of state law. *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1265 (11th Cir. 2010). Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 97 S. Ct. 285, 291 (1976). To state a claim of deliberate indifference, a plaintiff must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendants; and (3) causation between the defendants' indifference and the plaintiff's injury. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam).

The seriousness of a medical need is an objective inquiry. *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005) (per curiam).

A serious medical need is one that has been diagnosed by

a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted) (internal quotation marks omitted).

Whether the defendants acted with deliberate indifference is a subjective inquiry. *Kelley*, 400 F.3d at 1284. Each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To establish deliberate indifference, a plaintiff must allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans*, 626 F.3d at 564 (alteration in original) (internal quotation marks omitted). In determining whether an individual exercised gross negligence, we have considered: (1) indifference by prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; and (3) interference with treatment once proscribed. *See Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the

4

delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

In order for a denial of medical care to rise to the level of deliberate indifference, the treatment must be more than "medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (alteration omitted) (internal quotation marks omitted). Accordingly, a "simple difference in medical opinion" does not constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).

### *Discussion*

Milton alleged three distinct medical problems: (1) low blood sugar, resulting from his diabetes; (2) an infected hallux[1]; and (3) skin removal on his inner thighs, groin, and penis. Assuming, *arguendo*, that low blood sugar in a diabetic is a serious medical need, Milton did not allege that any delay in treating this need worsened his condition, nor contend that any defendant interfered with his treatment. Likewise, Milton failed to allege that the defendants' alleged indifference to his low blood sugar caused any injury. At most, Milton alleged that he was afraid something would happen to him. Accordingly, Milton fails to state a plausible claim against any defendant based on deliberate indifference to

---

[1] A hallux is "the innermost digit (as the big toe) of a hind or lower limb." Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/hallux.

his low blood sugar.

With respect to his two remaining medical conditions, Milton correctly argues that his claims against Turner, Moore, and Neal are delayed-treatment claims, not inadequate-treatment claims, which the district court did not acknowledge in its order dismissing the complaint. As explained below, the *pro se* complaint could also be liberally construed to allege interference-with-treatment claims against Moore and Neal. We next address these claims in turn.

***Moore and Neal***

*A. Interference with treatment*

Milton's allegations state a plausible claim against Moore and Neal for interference with the treatment of his infected hallux. Milton alleged that he first had his hallux examined on February 12, 2007, when he complained of "foot sores," as well as chafing on his inner thighs.[2] The nurse diagnosed an infected hallux, provided foot powder and ibuprofen, and told Milton to tell Moore and Neal to give him work boots for use when he was on mower squad. Milton alleged that he told Moore and Neal "what the nurse had just told [him] at sick

---

[2] Our analysis of the interference-with-treatment claims does not address Milton's skin problems because Milton did not allege that Moore and Neal interfered with the treatment of these conditions. Rather, he claimed that they delayed his treatment, as discussed in the next section.

call," but that they refused to issue him work boots. By February 20, Milton alleged that his hallux was swollen with pus and that he could barely walk on it.

Milton claims that his infected hallux presented a serious medical need. We agree. In *Mann*, we explained that a medical need is sufficiently serious if a delay in treatment worsens the condition, an argument we find applicable here. *Mann*, 588 F.3d at 1307. Milton's allegations support the inference that his condition worsened between February 12 and February 20. And Milton has also plausibly demonstrated that the condition posed a substantial risk of serious harm if left unattended. Here, one could reasonably infer that an infected hallux, if left untreated, would pose a substantial risk of harm, especially in a diabetic. In addition, Milton's hallux ultimately did need to be drained and required antibiotics and ten days of bed rest,[3] which supports the inference that it posed a substantial risk of harm.

Since the complaint reflects the existence of an objectively serious medical need, the issue then turns to the subjective inquiry of whether the defendants were deliberately indifferent to that serious medical need. Milton plausibly alleged that Moore and Neal had the requisite subjective knowledge of a risk of serious harm.

---

[3] It is not clear whether the doctor ordered ten days' bed rest for Milton's hallux, or for his other skin conditions. Construing the allegations in the light most favorable to Milton, we assume that the bed rest was for his hallux. *Redland*, 568 F.3d at 1234.

Milton told Moore and Neal "just what the nurse told him"—that he had an infected hallux and needed work boots. He also told them that his hallux may have to be amputated because of his diabetes. Under the facts as alleged, it is plausible that Moore and Neal had subjective knowledge of an obvious serious risk of harm, due to Milton's infected hallux, if Milton did not receive his work boots.

Milton also sufficiently alleged that Moore and Neal "interfered" with his treatment by refusing to provide work boots. And finally, Milton alleged a plausible "causal connection" between Moore's and Neal's refusal to provide work boots and his injury, as he alleged that the condition of his hallux worsened by February 20. Based on the foregoing, we vacate in part and remand as to the interference-with-treatment claims against Moore and Neal.

*B. Delayed treatment*

The complaint may also be read as attempting to state claims against Moore and Neal for delayed treatment. Reading the allegations in the complaint in the light most favorable to Milton, on February 20, Milton's hallux had swollen with pus and he could barely walk on it, and the skin on his inner thighs had scraped off and he was in much pain. Milton "explained his problem" to Neal, but Neal forced him to start working on the mower squad. Milton could not keep up with

8

the squad, Neal screamed at him to speed up, and Milton stopped mowing and grabbed his groin. When Neal asked him what he was doing, Milton responded that he was "hurting." Neal threatened Milton with lock-up if he did not keep mowing, Milton declared a medical emergency, Neal refused, and Milton worked for 20-30 more minutes. When Milton told Moore that Neal refused medical attention, Moore said, "So what! What do you want me to do? Go to sick call." Milton told Moore he would file an informal grievance, and Moore told him to file it and ordered him to the recreation yard. Milton went to the medical department at the conclusion of recreation.

Putting aside Milton's chafing and pain in his groin, he stated a plausible delayed-treatment claim against Neal based on his infected hallux.[4] As explained above, Milton alleged that his infected hallux was a serious medical need and that Neal had subjective knowledge of a substantial risk of serious harm. Milton also alleged that Neal disregarded the risk by requiring him to mow the grounds on February 20. Although the delay lasted only through the end of Milton's shift, if the allegations are accepted as true Neal not only delayed treatment—he deliberately inflicted pain. As this Court previously stated, with respect to a claim

---

[4] Milton's chafing is arguably not a plausible serious medical need, standing alone. We need not address this question, however, as Milton has alleged at least one serious medical need.

involving a prisoner's broken foot:

> [I]t may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if they had inflicted the pain themselves. Deliberately inflicted pain, as with an electric cattle prod, does not become unimportant and unactionable under the eighth amendment simply because the pain produced is only momentary. Even if we were to recognize as de minimus delays of a few seconds or minutes, a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim.

*Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (per curiam). Based on the foregoing, Milton stated a plausible delayed-treatment claim against Neal.

By contrast, Milton's allegations with respect to Moore failed to state a plausible delayed-treatment claim. Specifically, Milton failed to allege facts demonstrating that Moore was subjectively aware of a serious risk of harm. Milton alleged only that he told Moore that Neal had refused him medical care, which does not put Moore on notice of any of Milton's complaints, let alone of the possibility of a substantial risk of serious harm. Further, Moore caused only a short delay by ordering Milton to the recreation yard, and the allegations suggest that any additional delay was brought about by the nurse who allegedly failed to examine his groin that day—who is not named as a defendant—and Milton,

himself, as there is no allegation that he reported his condition to the nurse on February 21, when he received his daily insulin shot. Rather, Milton first went to sick call on February 22, apparently because that was the first morning that he had to work again.

Based on the minimal delay that Moore was alleged to have caused, and based on the limited facts Moore possessed, Milton failed to allege a plausible delay-in-treatment claim against Moore. Accordingly, we affirm the dismissal with prejudice of the delayed-treatment claim against Moore. But we vacate in part and remand with respect to the delayed-treatment claim against Neal.

### *Turner*

We next find that Milton failed to state a claim against Turner, his classification officer. Apart from Milton's allegations with respect to his low blood sugar, Milton alleged only that on February 16, he told Turner, in passing, that he had been injured, and that she told him to go to sick call. Based on this conclusory allegation, Milton failed to allege that Turner was subjectively aware of a risk of serious harm. Moreover, Turner told Milton to go to sick call, and thus Milton did not allege that she was deliberately indifferent through conduct amounting to more than gross negligence. We therefore affirm the dismissal of all claims against Turner.

11

### *Campos*

Milton also failed to state a claim against Campos, the senior physician. Exhibit G to the complaint indicates that Milton filed an inmate request addressed to Campos on February 20, complaining that his chafing and hallux had gotten worse. There is no allegation that Campos received this request because non-party Janice Warnock responded to it. Apart from allegations concerning his low blood sugar, Milton's only additional allegation against Campos is that she refused to write him a pass in May 2007 because his injuries were "in the past." Although Milton alleged that her opinion differed with that of another doctor, a difference in medical opinion does not constitute deliberate indifference. *See Waldrop*, 871 F.2d at 1033. Further, Milton alleged no causal connection between Campos's failure to write a work pass and any injury. We thus affirm the dismissal of all claims against Campos.

### *Conclusion*

Milton failed to state any claims against Turner and Campos, and we therefore affirm the dismissal with prejudice of the claims against these two defendants. Additionally, we affirm the dismissal of counts five through eight, which pled separate counts for damages and addressed potential affirmative defenses. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir.

2004) (noting that a plaintiff is not required to negate an affirmative defense in the complaint).

However, Milton did allege plausible claims for interference with medical treatment against Moore and Neal, as well as a plausible claim for delayed treatment against Neal. Thus, we vacate and remand as to the claims against Moore and Neal.[5]

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[5] Milton has abandoned any argument that Moore was subject to supervisory liability for Neal's actions because he did not argue it in his brief. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).